```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```
----------------------------------------X

JANE DOE,

                *Plaintiff,*

   -against-

UNITED STATES OF AMERICA, FEDERAL
BUREAU OF PRISONS, HUGH J. HURWITZ,
EUGENIO PEREZ, E.L. TATUN, Jr., MICHAEL
CARVAJAL, CAPTAIN YOUNG, JOHN DOE #1,
JOHN DOE #2, JOHN DOE #3, JOHN DOE #4,
JOHN DOE #5, JOHN DOE #6,

                *Defendants*.

----------------------------------------X

**MEMORANDUM AND ORDER**

19-CV-1239(KAM)(PK)

**KIYO A. MATSUMOTO, United States District Judge:**

    By joint stipulations approved by the Court on November 16, 2023, and January 16, 2024, the parties to this action discontinued the litigation with prejudice subsequent to the execution of a monetary settlement in the amount of $800,000. (*See* ECF Nos. 110, 113, and 114.) Plaintiff's underlying claims in this action arose out of her sexual assault while in custody at the Metropolitan Detention Center ("MDC") by former Bureau of Prisons ("BOP") Lieutenant Eugenio Perez. (*See* ECF No. 1, Complaint ("Compl."), at ¶2.) Plaintiff initiated the instant action on March 1, 2019, asserting *Bivens* claims and Federal Tort Claims Act ("FTCA") claims

1

against the United States, the BOP, and individual federal defendants.[1]  (*See generally* Compl.)

Plaintiff initially retained the law firm of Raiser & Kenniff, P.C., ("R&K") on November 3, 2016, to represent her and bring her claims of sexual abuse, before retaining the Law Office of Michael S. Lamonsoff, PLLC, ("MSL") as substitute counsel on December 19, 2019.  (ECF No. 114, Letter Motion Seeking Order to Determine Attorney's Fees by the Law Offices of Michael S. Lamonsoff, PLLC ("MSL Letter"), at 1; ECF No. 117, Letter Response in Opposition by Raiser & Kenniff, P.C. ("R&K Letter"), at 1.)  Plaintiff's current counsel, MSL, and former counsel, R&K, seek judicial intervention to apportion attorneys' fees, with MSL arguing that a 95%/5% split in their favor is appropriate, and R&K arguing for a 50%/50% split between the two firms.  (MSL Letter at 3; R&K Letter at 5.)

After reviewing the parties' submissions as to the fee dispute, and for the reasons given below, the Court determines

---

[1] Plaintiff's complaint also included claims arising under 42 U.S.C. § 1983, but the Court notes that those claims likely did not provide the basis for the settlement, given "Section 1983 does not provide a cause of action against the federal government" or its officials. *Guettlein v. United States Merch. Marine Acad.*, 577 F. Supp. 3d 96, 102 (E.D.N.Y. 2021); *see also Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009) ("since federal officials typically act under color of federal law, they are rarely deemed to have acted under color of state law") (internal quotation marks and citation omitted); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .") (emphasis added).

that MSL is entitled to 80% of the attorneys' fee in this matter, and R&K is entitled to 20% as fair compensation for their work performed on behalf of the Plaintiff in the underlying case.

## BACKGROUND

The case underlying this fee disputes stems from the Plaintiff's sexual abuse while in the custody of the Federal Bureau of Prisons by former Lieutenant Eugenio Perez. (*See generally* Compl.) Perez was convicted on May 14, 2018, after a trial by a jury on 23 criminal counts, including Deprivation of Civil Rights, Aggravated Sexual Abuse, Sexual Abuse, and Sexual Abuse of a Ward against five anonymous individuals who were in BOP custody. (*Id.* at ¶38.) One of the anonymous individuals referenced in the criminal case is the plaintiff in this matter. (*Id.* at ¶39.) Perez was subsequently sentenced to a term of 25 years in prison and 10 years of supervised release by this Court on June 17, 2020. *United States v. Perez*, No. 20-1982-CR, 2022 WL 1421408, at *1 (2d Cir. May 5, 2022).

Plaintiff brought civil claims against Perez, the United States, and several other defendants in the case underlying this fee dispute on March 1, 2019. (*See* Compl.) After several years of discovery overseen by Magistrate Judge Kuo, Plaintiff ultimately filed a joint stipulation of dismissal with prejudice against all defendants with the exception of Perez and the John Doe defendants on November 16, 2023. (ECF No. 108.) The

3

Stipulation was executed by the Court, and Plaintiff subsequently filed a joint stipulation of dismissal against the remaining defendants on January 16, 2024, which the Court also executed. (ECF No. 113.)

Plaintiff's current counsel, MSL, filed its letter seeking an order from the Court to determine the attorney's fees to be allocated between MSL and R&K on January 17, 2024. Plaintiff's former counsel, R&K, filed their opposition to MSL's requested apportionment on January 24, 2024. (*See generally* MSL Letter; R&K Letter.) The Court now summarizes the arguments by each firm regarding their work on the underlying case.

I. **Investigation & Drafting of the Complaint by R&K**

In its letter opposing MSL's motion, R&K represents that Plaintiff retained R&K "to prosecute her claims of sexual abuse" while still in the custody of BOP. (R&K Letter at 1.) R&K offers a summary of its work on Plaintiff's case, which included numerous meetings with Plaintiff while she was at the Metropolitan Correctional Center, Manhattan (the "MCC"), as well as substantive investigative and legal work to advance her claims. According to the letter, R&K drafted and filed an appeal with the Warden of the MCC regarding appropriate medical care for Plaintiff, drafted and filed grievance forms on Plaintiff's behalf, and researched, drafted, and filed Plaintiff's claims and completed the administrative appeal process. (*Id.* at 2.) An R&K associate also

4

attended the criminal trial of Perez in order to support Plaintiff during testimony and gain a better understanding of Plaintiff's claims for future legal action.  (*Id.*)

Importantly, R&K drafted and filed Plaintiff's May 11, 2018, Standard Form 95 (claim form) for submission to the United States Department of Justice and the BOP.  (*Id.*)  As part of this process, R&K "[o]btained and reviewed a voluminous amount of Plaintiff's documents for [the] administrative claim" and "[c]ompleted initial disclosures" with the BOP regarding the administrative claim.  (*Id.* at 3.)  Ultimately, R&K received a "right to sue" letter from the Department of Justice and the BOP on November 29, 2018, enabling the firm to prosecute Plaintiff's civil claims in this Court.  (*Id.*)

R&K's next major contribution to Plaintiff's case was the drafting of the complaint in the instant case.  (*Id.*)  R&K held meetings to discuss the complaint, including with Plaintiff, and researched the underlying claims, filed the complaint, obtained summonses and ensured that process was properly served on all defendants, including Perez, who was incarcerated at the time.  (*Id.*)  After filing the complaint, R&K litigated the matter, attending status conferences, filing discovery plans, drafting and serving Plaintiff's first set of interrogatories and document requests, and preparing Plaintiff's response to initial disclosures required by Fed. R. Civ. P. 26(a)(1).

Beyond the case itself, R&K also asserts that it took several steps to protect Plaintiff's wellbeing while she was in custody, including by filing appeals to ensure "Plaintiff received the proper medical treatment, including mental health care, while at MCC Manhattan, for the severe physical and psychological harm Plaintiff endured while at MDC Brooklyn." (R&K Letter at 1.) Ultimately, R&K argues that had they not "spent a voluminous amount of time and research exhausting all of Plaintiff's administrative remedies and procedures, Plaintiff would have been prohibited from filing this action." For this work, and their stewardship of the action prior to its filing until their discharge in December 2019, R&K argues they are entitled to "50% of the attorneys' fees . . . in this matter." (*Id.* at 5.)

**II.  MSL's Participation in Discovery and Settlement of the Case**

Plaintiff's current lawyers at MSL argue that they "performed the bulk of the legal work" in the instant case, and they described the work their firm conducted in their letter requesting an order to determine attorney's fees. (MSL Letter at 1.) MSL summarizes their contribution as encompassing prosecution of the case "for three years, taking significant steps to move the matter towards resolution, having attended countless status conferences, attend[ing] fourteen depositions, and ultimately settl[ing] the case for $800,000." (*Id.* at 2.) As discussed above, MSL was

6

retained by Plaintiff on December 19, 2019, at which point R&K was discharged. (*Id.* at 1.)

At the time MSL was retained, discovery was underway in Plaintiff's action. (*See, e.g.,* Minute Entry dated November 15, 2019.) Accordingly, MSL states in its letter that it "[r]ead and digested thousands of pages of discovery exchanged by various government defendants" and "[e]xchanged medical records with defendants and authorizations for Plaintiff's medical records." (MSL Letter at 2.) MSL also states that its attorneys "[a]ttended numerous status conferences" and "[a]uthored or contributed to numerous status letters to the Court." (*Id.*) Furthermore, MSL states that its attorneys "[p]repared and defended Plaintiff at her depositions" and "[c]onducted depositions of Defendants Andy Cruz, Eugenio Perez, and Carlos Martinez" as well as "depositions of Officer Cox, Officer Veronica Metzger, Lt. D'Anello Smith, Officer Thomas Rodriguez, Lt. Tomayo, Officer Timothy Geier." (*Id.*) Finally, MSL states that they "[n]egotiated and significantly reduced Plaintiff's liens (including funding and medical) in order for Plaintiff to obtain substantial financial recovery." (*Id.* at 3.) MSL asserts that it is entitled to the bulk of the attorney's fees in the matter because "the work that led to a favorable outcome/settlement was performed by [MSL]" and not R&K. (*Id.*)

## DISCUSSION

I.  **Jurisdiction**

It is well-established law that the dismissal of an action with prejudice does not divest a court of jurisdiction to determine a pending fee dispute. *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 157 (2d Cir. 2019) ("Where a district court has original jurisdiction over a civil action, 'it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees.'") (quoting *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 98 (2d Cir. 2003)). "This grant of ancillary jurisdiction empowers the district court to 'take actions necessary to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Id.* (quoting *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015)). "A court may also rely on ancillary jurisdiction to resolve a dispute among attorneys regarding the proper apportionment of fees earned during a case within the court's jurisdiction, even if the dispute does not directly involve a party to the dismissed action." *Borg v. 86th & 3rd Owner, LLC*, No. 08-CV-05913 (RJH), 2012 WL 234383, at *6 (S.D.N.Y. Jan. 24, 2012) (citing *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 90 (2d Cir. 2010)).

The Second Circuit has "held that several non-exhaustive factors can weigh in favor of exercising ancillary jurisdiction[, including]: (1) familiarity with the subject matter of the suit,

8

especially with the amount and quality of work performed by the attorneys; (2) a court's responsibility to protect officers of the court in such matters as fee disputes; (3) the convenience of the parties; and (4) judicial economy." *Levitt v. Brooks*, 669 F.3d 100, 104 (2d Cir. 2012) (citing *Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc.*, 863 F.2d 251, 256 (2d Cir. 1988)). All of the factors are present here and weigh in favor of the Court's exercise of ancillary jurisdiction. Having supervised proceedings since 2019, this Court is "undoubtedly the most familiar with the subject matter and the amount and quality of work performed by [the attorneys]." *Id.* The Court's responsibility to officers of the court is also implicated, and neither party argues that this Court's exercise of jurisdiction would inconvenience them. Accordingly, the Court will exercise ancillary jurisdiction over the fee dispute in the instant case.

## II.  Governing Law

Neither party disputes that the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.*, limits an attorney's recovery to twenty-five percent of the stipulated judgment or settlement amount. 28 U.S.C. § 2678. Nor do the parties dispute that New York law applies to the instant fee dispute regarding apportionment, and the Court agrees that New York state law should control the analysis here. *See, e.g., Foppiano v. City of New York*, No. 00-CV-7968 (FM), 2002 WL 31202716, at *4 (S.D.N.Y. Sept.

25, 2002) (applying New York law governing attorney's fees to a fee dispute in a Jones Act case); *Malmberg v. United States*, No. 06-CV-1042, 2022 WL 16630310, at *1 (N.D.N.Y. Mar. 29, 2022), aff'd sub nom. *Nichols v. Paul William Beltz, P.C.*, 2022 WL 16558728 (2d Cir. Nov. 1, 2022) (applying New York law governing attorney's fees to a fee dispute in an FTCA action).

Under New York law, when a client discharges an attorney without cause, "the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered[,] whether that be more or less than the amount provided in the contract or retainer agreement." *Lai Ling Cheng v. Modansky Leasing Co.*, 539 N.E.2d 570, 572 (1989). When a fee dispute involves only the attorneys on a case, and not the client, however, the rules are "somewhat different." *Id.* "The outgoing attorney may elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit for the reasonable value of services or, in lieu thereof, the outgoing attorney has the right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case." *Id.* R&K is arguing for a contingent percentage fee, and neither party argues that quantum meruit should apply. "The percentage may be fixed at the time of substitution but, as several courts have recognized, is better determined at the conclusion of the case when such factors as the amount of time spent by each lawyer on

10

the case, the work performed and the amount of recovery can be ascertained." *Id.*

An outgoing attorney must be "an attorney of record entitled to the protection of a lien granted by section 475 of the [New York] Judiciary Law" as a prerequisite to the "right to elect a contingent percentage fee." *Id.* Neither party disputes that R&K appeared as attorney of record for Plaintiff in the instant action, and neither party alleges that R&K was discharged for cause. As such, the Court finds that R&K may avail itself of the protection of a charging lien under New York law and may accordingly elect a contingent percentage fee. Given the instant case has settled for $800,000 and has been dismissed with prejudice, the Court may now determine the recovery appropriate to Plaintiff's former and current lawyers. The parties have not stated the total amount of attorney's fees in dispute, but the Court notes that the fees may not be in excess of 25% of the stipulated settlement amount, or $200,000.00, pursuant to 28 U.S.C. § 2678.

Courts applying New York law consider several factors in determining the proper contingent percentage fee for each set of lawyers, including: (1) "the time and labor spent by each" attorney or firm, as well as "the actual work performed" by each; (2) "the difficulty of the questions involved" and, related, "the skill required to handle the matter"; (3) each "attorney's skills and experience"; and (4) "the effectiveness of counsel in bringing the

matter to resolution." *Buchta v. Union Endicott Cent. Sch. Dist.*, 745 N.Y.S.2d 143, 145 (3d Dep't 2002); *see also Foppiano*, 2002 WL 31202716, at *4. In cases involving two sets of counsel, each with "extensive experience" in the subject matter of the case, courts have looked to a "key" issue: "how much work did each firm perform and how effective was that work?" *Foppiano*, 2002 WL 31202716, at *4. The Court will turn to that analysis now.

### III. Application

#### A. Each Firm's Work and its Effectiveness

Each set of attorneys played an important role in the instant case. But for R&K's assistance in exhausting administrative remedies on Plaintiff's behalf, she might "have been prohibited from filing [the] action" at all. (R&K Letter at 4.) R&K also laid the groundwork for the case by researching Plaintiff's claims, meeting with her while she was still incarcerated, and ultimately filing the complaint in federal court. (*Id.* at 3.) Finally, R&K shepherded the case through the initial stages of discovery, serving discovery demands and responses to required disclosures. (*Id.* at 3-4.)

MSL, as previously described, saw the case through to completion. MSL's attorneys prepared and defended Plaintiff at her depositions, and attended, by their own count, "fourteen depositions." (MSL Letter at 2.) MSL's lawyers also reviewed "voluminous amounts of discovery" and "attended numerous Status

Conferences" as the matter progressed. (*Id.*) Finally, and perhaps most importantly, MSL's attorneys saw Plaintiff's case through to settlement, and successfully negotiated a settlement on her behalf, ensuring she would "obtain substantial financial recovery." (*Id.* at 3.)

Both firms allege that they represented Plaintiff for a similar period of time – between three to four years – but the Court notes that MSL's period of representation was significantly more eventful, given it encompassed the vast majority of discovery in the case. Courts reviewing fee disputes have noted that, as compared to the drafting and filing of a complaint, "[a] much larger amount of preparation is required to properly defend a plaintiff in depositions, take depositions from defense witnesses . . . sift though discovery documents and make discovery requests." *Borg*, 2012 WL 234383, at *8. Furthermore, given that settlement occurred after four years of active litigation by MSL, the Court also notes that MSL's efforts "were far more crucial to the eventual settlement." *Id.* at *9. Thus, at least two of the factors this Court may consider weigh in favor of MSL.

**B. Case Law Applying the Factors**

Both firms argue that New York case law supports their proposed distributions of the attorney's fees at issue in the instant case. The Court will discuss those cases now, while noting that "the only clear lesson to be taken from them is that there is

13

no fixed pattern that decisions in this context must follow." *Borg*, 2012 WL 234383, at *10.

MSL cites three cases in support of its proposed distribution of 95%/5% in its favor - *Buszko v. City of New York*, 987 N.Y.S.2d 371 (1st Dep't 2014); *Shabazz v. City of New York,* 942 N.Y.S.2d 89 (1st Dep't 2012); and *Brown v. Governele*, 815 N.Y.S.2d 651 (2d Dep't 2006), *as amended* (Aug. 16, 2006).

In *Buszko,* the outgoing law firm represented the plaintiff for "four months" and "prepared and filed a bill of particulars, prepared and filed discovery demands and responses to defendants' discovery demands, obtained plaintiff's medical records, and retained two experts." 987 N.Y.S.2d at 372. The incoming attorneys, by contrast, represented the plaintiff "over the course of several years" and "performed the lion's share of the work, including representing plaintiff in a General Municipal Law § 50-h hearing, commencing the action by filing and serving a summons and complaint, preparing a summary judgment motion, continuing discovery, and successfully mediating a $3 million settlement in this personal injury action." *Id.* Accordingly, the Appellate Division found at 95% for the incoming attorneys and 5% for the outgoing attorneys to be appropriate. The Court finds the instant case to be distinguishable as it did not proceed to mediation, no summary judgment or other dispositive motion was filed, and R&K

14

represented Plaintiff during the investigation and filing of the complaint, not MSL.

In *Shabazz,* the outgoing attorneys "served the notices of claim on the municipal defendants, obtained plaintiff's medical records, represented him in a municipal 50-h hearing, and commenced the action by filing and serving a summons and complaint." 942 N.Y.S.2d at 90. The incoming attorneys, by contrast, "conducted all of the discovery and depositions in the case, retained all of the experts, selected a jury, represented plaintiff throughout the 10-day jury trial, obtained a $4 million verdict in plaintiff's favor, made and opposed post-verdict motions, and ultimately negotiated a $2.2 million settlement on plaintiff's behalf in an action that was complicated by plaintiff's credibility issues and the lack of witnesses." *Id.* Accordingly, the Appellate Division found an allocation of 95% to the plaintiff's incoming attorneys and 5% to the plaintiff's outgoing attorneys to be appropriate. The Court finds the instant case to be distinguishable from *Shabazz* as there was no trial, no post-verdict motions, and R&K conducted at least some portion of discovery prior to their discharge.

When examining *Brown v. Governele*, the district court in *Borg* summarized as follows:

> Finally, where outgoing counsel makes serious errors or performs nearly no substantive work in a matter, courts severely limit recovery of attorneys' fees. In *Brown v. Governele*, 29 A.D.3d 617, 815 N.Y.S.2d 651 (N.Y.2d Dep't 2006), the outgoing firm filed a deficient summons and

15

> complaint—which named the wrong defendant—never served the complaint, did no investigation, and obtained no records related to the matter. Br. for Appellant, 2005 WL 4716133, at *1; see Brown, 29 A.D.3d at 618, 815 N.Y.S.2d 651. The incoming firm, however, "filed an amended summons and complaint on behalf of the plaintiff, conducted discovery, successfully opposed a motion for summary judgment on the issue of the liability of [one] defendant . . ., and represented the plaintiff at mediation, which resulted in a settlement for the sum of $300,000." Brown, 29 A.D.3d at 618, 815 N.Y.S.2d 651. The Appellate Division modified the lower court's apportionment of fees to grant the outgoing firm 5%, and the incoming firm 95%, of the resulting attorneys' fee. Id. at 617-18, 815 N.Y.S.2d 651.

Borg, 2012 WL 234383, at *11. MSL points to no "serious errors" on the part of R&K, and this Court is not aware of any, and accordingly finds Brown v. Governele to be of limited use in assessing fees in the instant case. Furthermore, as noted by R&K, the pleadings initially filed in this action were the result of extensive research and investigation and were never amended. (R&K Letter at 5.)

R&K cites case law that establishes "that outgoing firms that file complaints and participate in some amount of discovery generally recover between 10% and 25% of an eventual attorneys' fee" or, in some cases, as high as 35%, but offers no precedent explicitly supporting its proposed 50%/50% distribution. (R&K Letter at 4-5.) The Court finds two of the cases cited by R&K in their discussion - Borg v. 86th & 3rd Owner, LLC, No. 08-CV-05913 (RJH), 2012 WL 234383 (S.D.N.Y. Jan. 24, 2012); and Foppiano v.

16

*City of New York*, No. 00-CV-7968 (FM), 2002 WL 31202716 (S.D.N.Y. Sept. 25, 2002) – to be instructive, and will discuss them now.

*Borg* involved two law firms – an outgoing law firm that prepared and filed a federal complaint, and an incoming law firm that oversaw discovery, prepared a summary judgment motion, took depositions, and conducted a mediation session that was "highly successful." 2012 WL 234383, at *8. Because the court concluded that the incoming law firm "conducted the vast majority of the substantive legal work in [the] case, including all discovery and settlement discussions," it ultimately awarded that firm 92% of the attorney's fees earned in the matter, and awarded 8% to the outgoing law firm. *Id.* at *14. The district court reasoned that the outgoing law firm "conducted no discovery and did not interact at all with defense counsel, but did file a complaint that was never amended and led, in part, to a successful settlement." *Id.* The Court finds the instant case to be somewhat distinguishable because MSL engaged in no dispositive motion practice and did not take the case to mediation, and R&K participated in at least some amount of discovery. Nonetheless, *Borg* does offer some parallels for the instant action.

As for *Foppiano*, the case was summarized in *Borg* as follows:

> Case law establishes that outgoing firms that file complaints and participate in some amount of discovery generally recover between 10% and 25% of an eventual attorneys' fee. First, in *Foppiano v. City of New York*, a personal-injury plaintiff who suffered two separate

17

>accidents hired the firm of Friedman & James ("F & J") on a contingent-fee basis shortly after the first incident occurred. *See* 2002 WL 31202716, at *1. F & J filed a complaint in the matter relating to the first injury, and the plaintiff returned to work. *Id*. As the parties conducted fact discovery, the second, more serious, accident occurred, and the parties and the court agreed that the first action would be discontinued without prejudice to make way for the filing of a second action encompassing both incidents. *Id*. The parties agreed that the discovery taken to that point was to constitute the "nonmedical fact-based discovery" in the forthcoming second action. *Id*. Before the second action was filed, however, the plaintiff discharged F & J and hired Schneider, Kleinick, Weitz, Damashek & Shoot ("SKW") to represent him. *Id*. at *2. SKW filed an amended complaint in the new action encompassing both accidents, and the parties proceeded to take medical discovery as well as limited additional fact discovery. *Id*. Eventually, the parties settled the matter before trial for the sum of $2 million. *Id*. The court awarded F & J 25% of the eventual attorneys' fee, and SKW 75%. *Id*. at *5. F & J's award was based on the fact that it "spent considerable time communicating with the City with regard to the payment of Foppiano's medical expenses," referred the plaintiff to a medical specialist, and filed the first complaint. *Id*. at *2.

*Borg*, 2012 WL 234383, at *10. *Foppiano* offers some parallels to the instant case – although no amended complaint was filed, both cases involve outgoing attorneys who oversaw at least some discovery, and incoming attorneys who settled the matter short of trial. 2002 WL 31202716, at *1-2. As such, the Court considers the distribution adopted by the district court in *Foppiano* to provide at least some guidance in the instant case.

After weighing the various factors and reviewing the submissions and precedent both from New York state courts and federal district courts applying New York law to fee allocation

disputes, the Court finds the following award to be appropriate: R&K is awarded 20% of the contingency attorney's fees in the matter, and MSL is awarded 80%. In reaching this conclusion, the Court considered the relative complexity and difficulty of the work conducted by MSL, including taking and defending multiple depositions, and overseeing three years of discovery, status conferences, and participating in settlement negotiations that resulted in the settlement. Though the work done by R&K was certainly important, and neither party points to any defect in R&K's oversight of the case through December 2019, the Court concludes that MSL's efforts were more important in bringing the case to a successful conclusion for the Plaintiff.

## CONCLUSION

For the reasons set forth above, the Court determines that R&K is entitled to 20% of the attorney's fees earned in this matter, consistent with 28 U.S.C. § 2678, and MSL is entitled to 80%. MSL and R&K are directed to file a joint status report apprising the Court that the ordered distribution has been effectuated no later than April 26, 2024.

**SO ORDERED**

Dated:   April 11, 2024
         Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

19